Today is Janes versus Grace et al, number 07-1271. Is it Heimbaugh or Himmelbach? Heimbaugh. Heimbaugh. And Mr. Cleese? May it please the court? Go right ahead. Pull that down a little bit. My name is Terry Heimbaugh. I'd like to reserve three minutes. I'm here on behalf of the appellant, Mr. Jerrell James. As you all know from the pleadings, my client was convicted, essentially solely on the testimony of the victim in the case, Mr. McClam. Mr. McClam's statement of identity was based on a 5-10 second I.D. Did he ask for a hearing in the district court? Did I ask for a hearing in the district court? No, we did not, Your Honor. It was our understanding that based on the fact that nothing had been, and I understand Mr. James had multiple counsel all the way up from direct appeal through up to the federal habeas. He didn't ask for any, none was asked for in the state court either. No, and that was my problem, Your Honor, that none was asked for. That's going to be a big problem for us here because you're asking us to adjudicate something where it's not exhausted in state court and it was never asked for in state court and wasn't asked for in the district court. Well, Your Honor, it's our opinion that the issue was exhausted in the state court and under Clinkscale, which I presented in my brief, the facts really are very, very similar and Clinkscale makes very clear on the case that is on all fours with this one where they had no additional evidence from any hearings or anything else that was done from the trial counsel as to what his tactical reason could or should have been. Clinkscale was decided solely upon the evidence that had been presented at the hearing and nothing more as to any tactical basis that the jury had. It's a presumption that counsel is performing as counsel and this is not a failure to investigate case. He actually spoke to the alibi, the alleged alibi witness, elected not to. You made no showing as a matter of fact that his election was improperly made by any evidentiary hearing asked for in the district court or in the court or in the state court. It's our position, Your Honor, that under Clinkscale and under that we can show as a matter that it was simply not objectively sound or reasonable for the trial counsel to not even have noticed the alibi and I would refer the court again to Clinkscale to some of the language in it specifically discusses this. There could be any number of reasons why he didn't call the ban. There could be any number. We don't know why, but we know he elected not to. You have not made a record in the state court proceedings showing that his election was improper under the Sixth Amendment. You only showed there are possibilities that he may be incorrect, but there's a presumption that he's functioning as counsel. Where have you shown us that his election not to call the ban was improper? Your Honor, our position is that it is improper that we don't have to make an additional showing of this. If I can just cite Clinkscale and the language of it. It says, with respect to the first prong of Strickland, the state relies upon the conclusion of the district court that Clinkscale failed to present sufficient evidence to rebut the presumption that his attorney's failure to file a timely alibi notice was part of a sound trial strategy. What the conclusion fails to recognize, however, is that even if Clinkscale's attorney subjectively believed that failing to file an alibi notice in some way strategic, which is doubtful, such a strategy cannot, under the circumstances presented in this case, which are factually like ours, sound objective. It has nothing to do with this case. In Clinkscale, he failed to file a form which would give him the ability to prove an alibi witness. In this case, there was no inhibition to him using an alibi witness. He interviewed the man and he elected not to call him. So we do not have any, in Clinkscale, there's an obvious violation. The lawyer forgot to file a form. In this case, you've shown nothing that he's done improper except alleging that even though he interviewed him and elected not to call him, you say he should have called him. There's nothing in the record why he should have called him. And there's no evidentiary record in the state court where you should have gotten an affidavit from the counsel, or if he didn't want to give you an affidavit, you could have asked the state court for an evidentiary hearing. If they denied it, then you could have asked in district court for an evidentiary hearing. There's nothing before us, and how do we decide this case? We'd be in big trouble wouldn't we, if we held for you, since in every case, with every conviction, there would be a habeas case automatically. Your Honor, unfortunately, because I was not counsel at the Supreme Court, I have what I have. No, I understand. But based on the facts that there was nothing there, and based on the objective facts that the Superior Court, first of all, misunderstood and misread the affidavit to start with. They did not give it the adequate consideration. Both Magistrate Hart and Judge Joiner both said that they couldn't understand where the Superior Court got the interpretation of the affidavit that they did. It was at that point that they said, no, we're not going to bother, because this wouldn't have helped anyway. Let me just see if I got the facts right here. He presented on direct appeal this issue. Yes, by permission of the Court. But he did not present it at PRCRA, is that correct? He did not. He did not present it at the PCRA level? No, he didn't. He had done it on direct appeal through request and permission, and the Superior Court granted him permission to address it on Superior Court direct appeal. I mean, my understanding is he presented on direct appeal that you've exhausted, but just as a practical matter, why would you not present it on PCRA? We don't know. I have no idea, Your Honor. As I said, he had a series of five or six different attorneys all appointed to him, so I have no way of knowing. My problem is that without an affidavit from trial counsel as to what his reasons were for not putting Mr. Wing on, how does anyone do a proper Strickland analysis? It's just an allegation. I understand, but I think you have to look at what harm would there have been to doing it. There was absolutely nothing to lose. As Clinkzell points out, he had everything to gain by putting on that alibi witness. I'm not so sure. This is a witness with a couple of dents. One can come up with a reason why it wouldn't be such a good idea to proffer this witness. As somebody pointed out in their briefs, it distracts from perhaps the main motivation for the defense, or the main purpose of the defense. I don't think it distracts at all. I think it fits quite well. The main defense was misidentification, and because the appellant did not testify, the only evidence that he could really present to support and make the misidentification defense work was the alibi evidence. I take umbrage at the fact that Mr. Wing, who is the affiant, had no family relationship. He simply owned the house and lived in the front, second-floor bedroom, while Mr. Jaynes rented the second-floor back bedroom. What's the relief you're asking from us? We're asking for a new trial. But based on the questions that have been asked so far, isn't the best you can really get is a remand for a factual development of the record to determine whether there's a strickland violation? Well, we'll take that in the alternative, absolutely, Your Honor, because I do think that's appropriate. You weighed that in the district court, and in fact, even in the district court, you're not entitled to it because you never asked for it in state court. That was my reasoning for not asking for it in the district court because we could not ask, or they had not asked for it in the state court. We would not grant something because if it had been asked for in the district court, it's not to retry state court matters. Now, you know, you ask why not call what harm, you could say, and what it would have been. And I can tell you, I've seen a lot of criminal cases, and if a defendant calls an alibi witness that the jury finds is lying, even if the defendant may be, that's the end of the case. If a jury thinks the defendant is calling an alibi witness to bail himself out, and the jury sees that that, or senses that that witness is lying, I've been there. That's the end of it. That defendant is going to get convicted faster than ever. We have no idea here what the attorney used as his criterion for not calling this man. And quite frankly, without him asking the attorney for an affidavit in the state court, or for counsel in state court to make a record, and if it was denied in state court, then you could have gotten an evidentiary hearing in district court. But we have here a complete blank, and my problem is, if we grant the petition for you in this case, even for an evidentiary hearing in district court, we're going to be opening up every single conviction in any case where there's an alibi witness and the attorney fails to call the witness automatically. It's going to be a habeas case, which is entitled to an evidentiary hearing. I think, and I can only offer that I think that this case is somewhat different from that, because we're looking at a case where the weight of the evidence against Mr. James was entirely based upon this one victim's testimony. There was no gunpowder, no car, no clothes, no nothing. It's a one-on-one, and it's a very close case. The majority of the cases dealing with alibis aren't dealing with cases that are nearly that close. Don't you think the attorney, that he knew it was a close case, and he felt, I don't know, but I can suppose he said, this is a close case. I'm going to win it on the identification of the victim, that he saw him for a few seconds, and that the victim had a grudge because he had a reason to identify him. So I'm not going to use this alibi witness because it's going to kill my case. That could have been his motivation. Without obviously knowing and being in his head, we can't tell. However, I do posit one last thought for your honors, and that is that the decision of whether or not to go with an alibi defense really is a core issue. It's an issue no different than whether or not an individual who's accused should testify, and it's one of those issues that my client specifically said he wanted him to call Mr. Wing to testify. And there's no evidence at all, you're right, of what Mr. Savino was thinking at the time. However, we do know that the client did request it. Did the attorney interview Mr. Wing? Did Mr. Savino interview him? According to Mr. Wing, he spoke with him about three weeks prior to it, and he told him the substance of what was in the affidavit, and Mr. Savino said, I'll get back with you, at which point he never did. We also saw him at trial, right? Mr. Wing actually showed up to the trial. He showed up at the trial, and by that point, however, it was too late because if no notice of alibi had been presented by the time of trial, it would have been too late to do anything about it. Okay. Thank you. Thank you very much. Mr. Blade. Good morning. Good morning, Judge Ambrose. Good morning, Judge Cowan. Good morning, Judge Shigaris. This case is one where you've got a magistrate recommending one thing, and the district court, while agreeing that the magistrate was correct on one part of it, decided that nonetheless would not find in the defendant's favor or the petitioner's favor here. Which is an unusual situation. Which is unusual. Right. Why should we not just remand to find out why the attorney did not call Wing? I mean, as one of the last statements of Ms. Heimbaugh, it's a close case, and this person could put you over the top. He's not related. He's giving an alibi that appears to be, doesn't appear to have a dog in the fight otherwise, and why would you not call him? I mean, that's almost the, it's almost a sine qua non that you have to vet him as completely as possible, and the only reason you wouldn't call him is if you think the guy is just lying. Well, Your Honor, I think that's part of it, but I think actually Judge Collin has addressed the exact question that Your Honor is raising. When you do, there's no doubt that having an alibi witness that is a good alibi witness and is very credible is an extremely powerful defense, because it goes directly to the government's case. It goes directly to the fact that here's what the government says happened at this time and place, and yet here is somebody else who is credible and says this person was not at that time and place. He was over here. He was somewhere else, and so you have a good alibi witness, and when you think that alibi witness can make that case to the jury, then that's, it is hard to find a reason not to. And this issue was exhausted at the state level for our purposes under Habeas Clause. The merits of this ineffectiveness claim, that's right. We're not making any kind of an exhaustion claim. So the case is before the court, and it was before the district court on the merits. Does that deference apply? Yes, it does, Your Honor, and Judge Chigares, I'm glad you mentioned that, because I think in looking at the case, I have to note for the record that I did not write the brief here, and so I've only been involved in the case a short time. And so, although I think my colleague, Mr. Fallon, who has left the office this week, did a good job in presenting our case, I don't have, in studying for this argument, I see things that I would have presented differently, and I see a couple of things I might not have said. But that being said, yes, not only that the deference applies, but I think it's important to note that there are two levels of deference here, because even if AEDPA didn't apply, even if this were purely on de novo review by the court, Strickland itself sets a very high standard in a case like this, as Judge Collin pointed out. There isn't any kind of claim that there was a lack of investigation here. It was purely a strategic decision, and Strickland itself has that language in it that says in those kinds of cases, counsel's decision, whatever the reasons may be. But we don't know, and there's actually more here I think that we don't know than we do know, we don't know why that strategic decision was made not to call wing. Right. We just don't know. Your Honor, that's exactly the reason why. There may be a wonderful reason. Right. But this is exactly why Strickland is an objective standard and why AEDPA is an objective standard. Because if it were not, if it were a subjective standard, then I think what Judge Collin pointed out would be correct. In every case, no matter what counsel did, no matter what the record showed that counsel did. But, again, as Ms. Einbach said, this goes to the core. Well, Your Honor, it almost sounds as if she's trying to raise a sufficiency claim. This goes to the core of the defense. Well, Your Honor, the bottom line, I think I, again, have to go back to Judge Collin's comments, it would establish a terrible precedent in this case. In what way? Simply because in every case there are subjective reasons that counsel made for his or her decisions. And the record itself shows what was actually done. If we had to reexamine in every case the subjective reasons of counsel, rather than simply look at the record, I mean, that would overturn Strickland. My biggest concern here is that the district judge says there's absolutely, the adverb absolutely, no evidence whatsoever as to what his trial counsel's trial strategy was or why Mr. Wing was called to testify. In the absence of evidence, we are constrained to presume that Savino affirmatively decided not to call Wing for at least the reasons discussed in footnote three of his opinion, and this decision was objectively reasonable. Which is exactly right. But the affidavit of 9-11-99 of Wing, which the district judge read very differently from what the affidavit said. The affidavit says that, and let me see if I can find it here. It's in the supplemental appendix. It's essay seven. There was no way possible that Gerald Janes left the house that night without my seeing him go down the stairs or asking Cynthia or myself to watch the child. Right. Right. That is the core of a defense. Right. And I think in viewing the ineffectiveness claim on an objective standard, you have to ask, well, what on these facts, other than what subjectively Mr. Savino might have thought yes or no about this, about presenting this evidence, how do we evaluate the ineffectiveness claim? And then how do we say whether the state court's evaluation of the ineffectiveness claim was reasonable or not? Again, you have two objective levels here that have to be overcome. But does anything prevent us, I mean, without deciding the merits, does anything prevent us from remanding this case for a hearing? Well, Your Honor, my position is. How about 2254E2? Well, besides that, if we could get around that, I mean, I think that the statute itself precludes a hearing where there's been a failure to develop the facts on the state level, which I think there has been here. I think at the very least there has to be a request for. Well, when was the 9-11-99 affidavit put in? That was put in on direct appeal as part of a supplemental brief. So it was put in on direct appeal, and you're saying it was exhausted. You can see it was exhausted, and I agree, it's exhausted. Right, right. And, in fact, as I recall, if you put it under direct appeal, you're not supposed to put it in on PCRA, right? Your Honor, you could move it into PCRA in a different way on a different basis. I think that counsel could have said something like direct appeal counsel was ineffective or improperly litigating the case on direct appeal. Under 9543, it looks like, B3, petitioner cannot raise claims in a PCRA petition that were previously litigated, such as on direct appeal. Right, right. But he could have said something like his direct appeal counsel. He could have said, in PCRA, my direct appeal counsel was ineffective for not properly litigating this particular claim and not asking for a hearing. Yeah, well, I mean, what you're saying is, I mean, I think that's what the petitioner's position has got to be, that what we have here is a failure of proof and that you might have a, if she could get an affidavit from the lawyer or some other proof that he failed to call this man and the reason is not very good, she may have a perfect habeas case. Right. But, or to go back to a PCRA situation, but under 2254E2, as it comes to us in the court of appeals, we have a failure of proof here. We have a presumption, which is a strong presumption, and we have no proof to overrule that presumption. Right. And I agree, Judge Cowen, with your observation also, that in a sense, asking for this type of relief, when Judge Ambrose asked, what exactly do you want this court to do? And counsel said, we want a new trial or an evidentiary hearing. I mean, the evidentiary hearing was not even put before the district court here. This is a 2254E2 situation. Right. That's what we agreed. I mean, the request wasn't even made, or 2254E2 wasn't even addressed to distinguish. We'd be going out of our assigned place if we start sending it to a district court for an evidentiary hearing when none was requested, even in state court. I agree with that, Your Honor. I agree with that. But let me ask you something. If they could get an affidavit out of this attorney, I'm not going to say what it, I mean, which says, you know, I just didn't like the way the guy looked. I didn't like the way he parted his hair or something like that. Right. I didn't call him for some reason which is ridiculous. It's, Your Honor. They could go back to PCRA, couldn't they? They would have a stronger claim for an evidentiary hearing. I think there would still be problems. And I think the main problem still comes down to the fact that both Strickland and AEDPA are objective standards. And the fact that the lawyer may have had certain reasons for making a strategic decision, certain subjective reasons that may have been a problem. Maybe he read it in his horoscope that morning. And, you know, but that's not even being proffered here. I mean, there's no improper decision-making rationale being even attributed to the lawyer as a proffer at all. It's just we don't know. And the distinction I think the Court can rest on is that the fact that something is an unknown fact does not mean it's a disputed fact. There's no fact. There's simply nothing in dispute. And I think what Judge Ambrose pointed out is that when Judge Joyner below addressed this exact situation, he essentially said the law fills in. The law, because it's subjective standard and we don't know what the lawyer's exact motivation is, the law presumes it because Strickland starts out with the lawyer makes strategically good decisions. And they have to be disproven. And so therefore the law on the facts and on the record, the law, in effect, supplies the lawyer's reasons. And in this case, even Judge Joyner, in a footnote in his opinion, pointed out different reasons why this particular alibi evidence would not be good. Well, he doesn't know any more about reasons than we do, but that's what I'm saying. It's really a failure proof on the petition. Yes. But Judge Collin, if I could amplify on another of your comments, and if I could add to the record, in preparing for this case, my colleague, Mr. Fallon, made an argument in 25 to 27 of the red brief. And I think that that was discussed when Ms. Heimbaugh was here, too, about when you bring an alibi defense, how it essentially is a potential to confuse the jury. And Mr. Fallon, my predecessor, did not cite a case. There is a case, there's an interesting case that I just found yesterday from this circuit. It's Judge Garth's opinion from 1993. If I could just note that for the record. What's the site? It's United States v. Simon, S-I-M-O-N. And the site is 995 Federal 2nd, 1236, 3rd Circuit, 1993. And in that case, you had a similar case. You had a lawyer who did present alibi testimony, and the court was concerned about what kind of instruction the jury was supposed to receive upon alibi testimony. And the court makes an interesting observation, because it says, we require a specific. This is at page 1243. We require a specific instruction regarding an alibi defense because, quote, the jury is likely to become confused about the burden of proof when an appellant offers this type of evidence. Quoting a prior case of this court, United States v. Booz, B-O-O-Z, from 1971. And that's that in itself. But what's that got to do with? The question is, should the trial counsel have put on this alibi witness? The trial counsel did not put on this alibi witness. We don't know why. Right. That is. And it's clear that I think we would all agree that this alibi witness, if believed by the jury, would probably would have resulted what would have resulted in a not guilty. Well, Your Honor, because the point of our cited cases that that our court has recognized that calling alibi witness could distract the jury. That's right. That's the Simon case and the Booz case that I just referenced. Another case called Diggs v. Owens to the same effect. Yes. Yes. It's a distraction. It's a matter of strategy for counsel. And I agree. If you have a good alibi. It's a clear win or it's a clear loss. That's it. That's it. The alibi witness is a bomb. That's it. If the jury believes the alibi witness is not guilty, if the jury thinks the guy is lying. That is the end of the day. Your Honor, that's I agree with that completely. That's exactly why. If you have a good alibi witness and if you have a good alibi defense, it is. It is. Do we know if this guy was a good alibi witness? Well, Your Honor, we know what the record has and we know that it would raise for one thing. It would raise certain questions. It would raise questions about, well, if he really wasn't in the time and place. Do we know if he's a good alibi witness? Well, we know that Savino talked to him on two occasions. And we know that Savino made a decision not to call him. Savino could, Your Honor, Savino knew exactly what he would be called. He knew he would be asked, you really didn't see him that whole time, did you? You were recovering from a stroke during that time, did you? You were dozing off at that time, did you? And the jury would have heard every one of that. But what I did know is he wouldn't leave the house without either asking me or the woman in the house to watch the child. Which is an inference, and I'm sure he had a subjective assurance about that inference. It would have been different. Your Honor, I agree with this. Suppose Wing had said something like he was in the room with me watching television for that entire time and I was not dozing off. And in fact, we were talking about the television the entire time. And that time encompassed the time of this killing. I'm sorry, the time of the shooting. That's a good alibi. I would agree on that. But instead, he saw him a couple of hours before. He made an inference that he didn't see him leave the house afterwards. It was an inference. He was dozing off. He was recovering. He had health problems. The other question that it raises is there's actually another person involved here that hasn't come out in any of the briefs. The other person in the house. There was another person. It was the niece. Where was the niece? The jurors would have immediately, if this alibi witness had testified, the jurors would have said, well, what about the niece? She was there. We're speculating, you're right. Why don't we hear from Ms. Heimbaugh. Thank you, Your Honor. Thank you. Thank you. Just a couple of very brief points. First of all, I think factually it's incorrect to say that Mr. Wing was dozing off. His affidavit says that he did not doze off just shortly before 2 o'clock. But letting that go. The question, I guess, here is was there under 2254E2 a failure to develop the factual basis of a claim in state court proceedings? In other words, in effect, what you've got to show is did he develop this sufficiently on direct appeal? I can't argue but with what the facts are in that he didn't develop it on direct appeal at superior court and did not raise it as a PCRA claim going back to that. I'd like to say that we couldn't now go back and get an affidavit from Mr. Savino and present it to the PCRA court because it would be considered untimely. It's not new evidence because it was evidence that theoretically was available at the time of the trial that was not presented. So he has no other alternative. And I would end with the proposition that this is potentially an actually innocent gentleman. This is a man who through essentially no fault of his own, through multiple counsel, were unable to get the information in on a very, very close case. This is a case where he was charged and convicted and serving 20 to 40 years. And on a case where the only person who testified against him was a gentleman who had a clear motive to testify against him. Given all of those factors, given that, and I think, again, I have to rely back on clean scale, given all of that, under Strickland, it was simply not objectively reasonable for Mr. Savino have not put this person up on the stand. To have not noticed him as an alibi witness and to have not called him. Under all the facts that he was given, he had nothing else. He knew that the appellant was not going to testify, so he couldn't personally say it's a misidentification. So without the alibi, he left the client essentially defenseless. Thank you, Your Honor. Thank you. Thank you to both counsel for a well-presented argument. We'll take the matter under advisement.